# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| PRESSMAN, INC. d/b/a PILL BOX PHARMACY, a Florida Limited Liability Company, individually and as the representative of a class of similarly-situated persons, | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | CASE NO. 16-60089-CIV-DIMITROULEAS |
| BAYER AG, BAYER CORPORATION, BAYER HEALTHCARE LLC, BAYER DIABETES CARE, ASCENSIA DIABETES CARE US, INC., ASCENSIA DIABETES CARE HOLDINGS AG, ASCENSIA DIABETES CARE, and PANASONIC HEALTHCARE HOLDINGS CO., LTD, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | | |

## AMENDED CLASS ACTION COMPLAINT

Plaintiff, Pressman Inc. d/b/a Pill Box Pharmacy ("Plaintiff"), brings this action on behalf of itself and all other persons similarly situated, through its attorneys, and except as to those allegations pertaining to Plaintiff or its attorneys, which allegations are based upon personal knowledge, alleges the following upon information and belief against Defendants Bayer AG ("Bayer"), Bayer Diabetes Care ("BDC"), Bayer Corporation ("Bayer Corp."), Bayer Healthcare LLC ("Bayer Healthcare"), Ascensia Diabetes Care ("ADC"), Ascensia Diabetes Care

US, Inc. ("Ascensia US"), Ascensia Diabetes Care Holdings AG ("Ascensia AG"),

and Panasonic Healthcare Holdings Co., Ltd., (collectively "Defendants"):

## PRELIMINARY STATEMENT

1.      This case challenges Defendants' practice of faxing unsolicited

advertisements to pharmacies and other health care companies.

2.      Defendants sent advertisements in an attempt to market and sell its

diabetic blood glucose monitoring equipment, and other health care related items.

3.      The federal Telephone Consumer Protection Act, 47 USC § 227 (the

"TCPA"), prohibits a person or entity from faxing or having an agent fax

advertisements without the recipient's prior express invitation or permission ("junk

faxes" or "unsolicited faxes").

4.      The TCPA mandates that when a person or entity sends a fax

advertisement it must always include a very specific opt-out notice that is clearly

and conspicuously displayed on the first page of the advertisement. *See* 47 U.S.C.

§ 227 (b) (2) (D); and 47 C.F.R. § 64.1200 (a) (4) (iii).

5.      The TCPA provides a private right of action and provides statutory

damages of $500 - $1,500 per violation. If the Court finds the advertisements were

sent knowingly or willfully, then the Court can treble the damages.

6.      Unsolicited faxes damage their recipients. A junk fax recipient loses

the use of its fax machine, paper, and ink toner. An unsolicited fax wastes the

recipient's valuable time that would have been spent on something else. A junk fax interrupts the recipient's privacy. Unsolicited faxes tie up the telephone lines, prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message.

7.     On behalf of itself and all others similarly situated, Plaintiff brings this case as a class action asserting claims against Defendants under the TCPA, and the common law of conversion.

8.     Plaintiff seeks an award of statutory damages for each violation of the TCPA.

## PARTIES, JURISDICTION AND VENUE

9.     Plaintiff is a Florida Limited Liability Company with its principal place of business in Broward County, Florida.

10.     Defendant Bayer AG ("Bayer AG") is a global enterprise based in Germany with its registered office is at Kaiser-Wilhelm-Allee 1, 51368 Leverkusen and its material business activities are in the fields of health care,

agriculture and high-tech polymer materials take place in HealthCare, CropScience and MaterialScience.[1]  Bayer AG is also known as Bayer Altersversorgung GmbH.

11.    Defendant Bayer Diabetes Care had headquarters based both in Basel, Switzerland and Whippany, NJ (USA) and its material business activities included the development, manufacture and sale of blood-glucose monitoring systems.

12.     On information and belief, according to a June 2015 press release, Bayer AG "entered into a definitive agreement to sell its Diabetes Care business [Bayer Diabetes Care] to Panasonic Healthcare Holdings Co., Ltd., a company which is backed by funds sponsored by leading global investment firm KKR and the Panasonic Corporation. The total consideration for the transaction is EUR 1,022 million (JPY 138 billion). The sale will include the leading ContourTM portfolio of blood glucose monitoring meters and strips, as well as other products such as BreezeTM2, EliteTM and MicroletTM lancing devices."[2]

13.    On information and belief, the sale transaction was finalized on January 5, 2016 and Bayer Diabetes Care is presently doing business as Ascensia Diabetes Care, a/k/a Ascensia Diabetes Care Holdings AG and Ascensia Diabetes Care US, Inc. "The acquired Diabetes Care business will operate as a stand-alone

---

[1] Bayer 2014 Annual Report. (http://www.annualreport2014.bayer.com/en/general-information.aspx)

[2]  Bayer AG Press Release Dated June 10, 2015. (www.news.bayer.com); (http://www.press.bayer.com/baynews/baynews.nsf/id/3C470A62C5248380C1257E60001C1A54/$File/2015-0228E.pdf?open&mod=06.01.2016_15:02:46)

company named Ascensia Diabetes Care that will provide high-quality solutions and precision tools to serve the needs of people with diabetes. Together Ascensia Diabetes Care and Panasonic Healthcare will develop, manufacture, market and sell blood glucose monitoring meters and strips for people with diabetes in more than 125 countries."[3]

14.    Defendant Ascensia Diabetes Care US, Inc.'s United States headquarters is located at 5 Wood Hollow Rd, Parsippany, NJ 07054 USA, and is doing business as Ascensia Diabetes Care.

15.    Defendant Ascensia Diabetes Care Holdings AG's Headquarters is located at Peter Merian-Strasse 90, 4052 Basel, Switzerland, and is doing business as Ascensia Diabetes Care.

16.    On information and belief, Defendant Panasonic Healthcare Holdings Co., Ltd. was "Established in 2014 … [and], is located at 〒105-8433, 2-38-5 Nishishimbashi, Minatoku, Tokyo, Japan, and is involved in developing,

---

[3] Panasonic Healthcare Holdings Press Release dated January 5, 2016 (http://www.businesswire.com/news/home/20160104006641/en/Panasonic-Healthcare-Holdings-Completes-Acquisition-Leading-Diabetes); (http://www.ascensia.com/About-Us/Our-Approach/); (http://www.ascensia.com/Contact-Us/).

manufacturing, selling and servicing medical equipment through its subsidiary Panasonic Healthcare Co., Ltd."

17.     Defendant Bayer Corporation is an Indiana Corporation with its principal place of business in Pittsburgh, Pennsylvania.

18.     Defendant Bayer Healthcare LLC is a Delaware Limited Liability Company with its principal place of business in Whippany, New Jersey.

19.      Non-Party "Archway" refers to Archway, or Archway Marketing Services, Inc., or any other Archway related company, (http://www.archway.com), along with any of its employees or agents. Archway claims to "offers resources to help you make informed decisions about [it's clients] marketing execution and product distribution initiatives." Archway markets itself to the "Pharma" community, "as a leading provider of marketing logistics, fulfillment services and supply chain management solutions. We help brands achieve greater return on marketing execution and product distribution with tailored solutions that drive financial efficiencies, grow revenue and increase profitability."  Archway also claims that it can solve "complex marketing challenges with our solutions that help you plan, create, produce, execute and measure your programs. Spanning your entire campaign lifecycle, our solutions provide the visibility and insight you need to maximize your return on marketing execution and product distribution."

20.     Non-Party "TMS Health" refers to TMS Health, a Xerox Company, 4950 Communication Avenue | Boca Raton, FL 33431 | 800.867.2340 (http://www.tmshealth.com), along with any of its employees or agents.  TMS Health sells "Fax" as a "Method of Contact" for clients such as Defendants, and claims that for "Health Care Communications – We Touch Decision Makers." "TMS was founded to create and deliver professional communication programs for one of the most competitive and sophisticated market environments – healthcare and pharmaceuticals. Today, we craft custom solutions for our client partners across many industries, providing them with clear, concise plans that improve sales reach, boost bottom lines and reinforce brand identity. We deliver customized sales, service and marketing programs designed to achieve our clients' business goals while creating relationships that resonate – delivering value and building brand loyalty. At TMS, we understand that making a connection with someone, be it a patient, a consumer, a customer, a prescriber or an influencer, presents a defining moment – the opportunity to forge a meaningful relationship as we deliver a complex and often sensitive message. We listen and respond to the unique needs of each customer and prospect."[4]

21.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

_____

[4] (http://www.tmshealth.com/company/)

22.     Venue is proper in the Southern District of Florida because Defendants committed a statutory tort within this district and a significant portion of the events took place there.

## FACTS

23.     Among other dates, on June 30, 2015, August 11, 2015, August 25, 2015, September 8, 2015, and October 6, 2015, unsolicited fax advertisements were sent to Plaintiff. Group Exhibit A, includes copies of the subject fax advertisements. The fax advertisements attached as Group Exhibit A were sent, or caused to be sent, by Defendants.

24.     On information and belief, Group Exhibit A and other similar advertisements were created by Bayer's Diabetes Care Unit. Defendants maintained a pattern and practice of creating similar fax advertisements.

25.     On information and belief, Group Exhibit A and other similar advertisements were sent "at Bayer's request" by Archway. Defendants maintained a pattern and practice of requesting Archway to send similar fax advertisements.

26.     On information and belief, Group Exhibit A and other similar advertisements were sent "at Bayer's request" by Archway using lists provided by TMS Health or other list providers. Defendants maintained a pattern and practice of requesting TMS Health or other list providers to obtain lists which were then used to send fax advertisements.

27.     According to Bayer, and on information and belief, "it obtained a list of pharmacies likely to have patients whose medical insurance was provided by BCBSF and the fax numbers for such pharmacies from TMS Health" and that "TMS Health did not separately invoice Bayer for the provision of this list."

28.     On information and belief, Defendants maintained a pattern and practice of obtaining and using similarly targeted marketing and advertising type lists from TMS Health or other list providers which were then used to send fax advertisements.

29.     According to Bayer, and on information and belief, "it provided TMS Health with a list of zip codes and requested that TMS Health send it a list of all pharmacies located in such zip codes. TMS Health in turn provided a list of those pharmacies, and that list formed the basis for the transmission of" <u>Group Exhibit A.</u>

30.     On information and belief, Defendants maintained a pattern and practice of supplying TMS Health or other list providers with lists of zip codes, or area codes, or other identifying and location criteria, in order to request from TMS Health or other list providers, that it supply lists of pharmacies or other health care related entities, which were then used to send fax advertisements.

31.     The subject faxes advertise the goods, products or services of Defendant Bayer. *Id.* <u>Group Exhibit A</u> consists of several one-page faxes that

attempts to sell Defendants' medical products. <u>Group Exhibit A</u> contains information about the capabilities and features of the device, capabilities of the equipment, and methods to get in contact with Defendants. Defendants sent, or caused this unsolicited fax advertisement to be sent to Plaintiff and a class of similarly-situated persons.

32.   Plaintiff did not invite or give permission to anyone to send it the faxes within <u>Group Exhibit A</u> or any others.

33.    The faxes contained within <u>Group Exhibit A</u>, and similar fax advertisements, do not contain a clear and conspicuous opt-out notice. Defendant failed to include any form of an opt-out notice. *Id*. Defendants maintained a pattern and practice of creating similar fax advertisements that did not contain TCPA compliant opt-out notices (*See* 47 U.S.C. § 227 (b) (2) (D); and 47 C.F.R. § 64.1200 (a) (4) (iii)).

34.   On information and belief, Defendants sent the faxes contained within <u>Group Exhibit A</u>, to Plaintiff and more than 39 other recipients without first receiving the recipients' express permission or invitation. This allegation is based, in part, on the fact that Plaintiff never gave permission to anyone to send the subject fax advertisement to it, that Plaintiff never conducted business with Defendants, that Defendants are located across the United States and the World,

and that sending advertisements by fax is a very cheap way to reach a wide audience.

35.     There are no reasonable means for Plaintiff (or any other putative Class member) to avoid receiving illegal faxes. Fax machines are left on and ready to receive the urgent communications their owners desire to receive.

## CLASS ACTION ALLEGATIONS

36.     Plaintiff brings this action as a class action on behalf of itself and all others similarly situated as members of the Class, initially defined as follows:

> All persons who were sent one or more telephone facsimile messages on or after four years prior to the filing of this action, that advertised the commercial availability of property, goods, or services offered by "Bayer," that did not contain an opt-out notice that complied with federal law.

37.     Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest, any officers or directors of Defendants, the legal representatives, heirs, successors, and assigns of Defendants, and any Judge assigned to this action, and his or her family.

38.     This action is brought and may properly be maintained as a class action pursuant to Fed. R. Civ. P. 23.  This action satisfies the numerosity, commonality, typicality, adequacy requirements under Rule 23 (a). Additionally, prosecution of Plaintiff's claims separately from the putative class's claims would create a risk of inconsistent or varying adjudications under Rule 23 (b) (1) (A).

Furthermore, the questions of law or fact that are common in this action predominate over any individual questions of law or fact making class representation the superior method to adjudicate this controversy under Rule 23 (b) (3).

39.     **Numerosity/Impracticality of Joinder:**  On information and belief, the Class consists of more than thirty-nine people and, thus, is so numerous that joinder of all members is impracticable. The precise number of Class members and their addresses are unknown to Plaintiff, but can be obtained from Defendants' records or the records of third parties.

40.     **Commonality and Predominance:**  There is a well-defined community of interest and common questions of law and fact that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from one Class member to another, and which may be determined without reference to the individual circumstances of any Class member, include, but are not limited to the following:

a.      Whether Defendants sent fax advertisements;

b.      Whether the faxes contained in Group Exhibit A advertised the commercial availability of property, goods or services;

     c.     The manner and method Defendants used to compile or obtain the lists of fax numbers to which they sent the faxes contained in <u>Group Exhibit A</u> and other unsolicited fax advertisements;

     d.     Whether Defendants faxed advertisements without first obtaining the recipients' express permission or invitation;

     e.     Whether Defendants' failure to provide an opt-out notice violated the TCPA;

     f.     Whether each Defendant is, respectively, directly or vicariously liable for violating the TCPA;

     g.     Whether Plaintiff and the other Class members are entitled to statutory damages;

     h.     Whether Defendants should be enjoined from faxing advertisements in the future;

     i.     Whether the Court should award trebled damages;

     j.     Whether Defendants' conduct as alleged herein constituted conversion;

41.    **<u>Typicality of claims:</u>** Plaintiff's claims are typical of the claims of the Class because Plaintiff and all Class members were injured by the same wrongful practices. Plaintiff and the members of the Class are all individuals who received unsolicited fax advertisements from Defendants that also did not contain an opt-out

notice pursuant to the TCPA. Under the facts of this case, because the focus is upon Defendants' conduct, if Plaintiff prevails on its claims, then the putative Class members must necessarily prevail as well.

42.     **Adequacy of Representation:** Plaintiff is an adequate representative of the Class because its interests do not conflict with the interest of the members of the Class it seeks to represent. Plaintiff has retained counsel competent and experienced in complex class action litigation and Plaintiff intends to vigorously prosecute this action. The interest of members of the Class will be fairly and adequately protected by Plaintiff and its counsel.

43.     **Prosecution of Separate Claims Would Yield Inconsistent Results:** Even though the questions of fact and law in this action are predominately common to Plaintiff and the putative Class members, separate adjudication of each Class member's claims would yield inconsistent and varying adjudications. Such inconsistent rulings would create incompatible standards for Defendants to operate under if/when Class members bring additional lawsuits concerning the same unsolicited fax advertisements of if Defendants choose to advertise by fax again in the future.

44.     **Class Action is the Superior Method to Adjudicate the Common Questions of Law and Fact that Predominate:** A class action is superior to other available methods for the fair and efficient adjudication of this lawsuit, because

individual litigation of the claims of all Class members is economically unfeasible and procedurally impracticable. The likelihood of individual Class members prosecuting separate claims is remote, and even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. Relief concerning Plaintiff's rights under the laws herein alleged and with respect to the Class would be proper. Plaintiff envisions no difficulty in the management of this action as a class action.

**COUNT I**
**TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227**

45.     Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

46.     Plaintiff brings Count I on behalf of itself and a class of similarly situated persons.

47.     The TCPA prohibits the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine…." 47 U.S.C. § 227 (b) (1).

48.     The TCPA defines "unsolicited advertisement," as "any material advertising the commercial availability or quality of any property, goods, or

services which is transmitted to any person without that person's express invitation

or permission."  47 U.S.C. § 227 (a) (4).

    49.    The TCPA provides:

>     3.  <u>Private right of action</u>.  A person may, if otherwise permitted by the laws or rules of court of a state, bring in an appropriate court of that state:

>>     (A)    An action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

>>     (B)    An action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

>>     (C)    Both such actions.

    50.    In relevant part, the TCPA states that "[t]he Commission shall

prescribe regulations to implement the requirements of this subsection . . . in

implementing the requirements of this subsection, the Commission shall provide

that a notice contained in an unsolicited advertisement complies with the

requirements under this subparagraph only if . . . (i) the notice is clear and

conspicuous . . ."  47. U.S.C. § 227 (b) (2) (D) (i).

    51.    Additionally, "a notice contained in an unsolicited advertisement

complies with the requirements under this subparagraph only if . . . (ii) the notice

states that the recipient may make a request to the sender of the unsolicited

advertisement not to send any future unsolicited advertisements to a telephone

facsimile machine or machines and that failure to comply, within the shortest reasonable time, as determined by the Commission, with such a request meeting the requirements under subparagraph (E) is unlawful . . ."  47 U.S.C. § 227 (b) (2) (D) (ii).  The shortest reasonable time has been determined to be thirty (30) days. 47 C.F.R. § 64.1200 (a) (4) (iii) (B).

52.    The opt-out notice must also include "a domestic contact telephone and facsimile number for the recipient to transmit such a request to the sender" as well as a "cost-free mechanism for a recipient to transmit a request pursuant to such notice . . ." 47 U.S.C. § 227 (b) (2) (D) (iv).

53.    Moreover, "a notice contained in an unsolicited advertisement complies with the requirements under this subparagraph only if . . . (v) the telephone and facsimile machine numbers and the cost-free mechanism . . . permit an individual or business to make such a request at any time on any day of the week."  47 U.S.C. § 227 (b) (2) (D) (v).

54.    The Court, in its discretion, can treble the statutory damages if the violation was knowing.  47 U.S.C. § 227.

55.    Defendants violated 47 U.S.C. § 227 et seq. by sending advertisements by fax (such as Group Exhibit A) to Plaintiff and the other Class members without first obtaining their prior express invitation or permission.

56.     Defendants violated 47 U.S.C. § 227 et seq. by not providing a clear and conspicuous opt-out notice on the face of the subject fax.

57.     Defendants violated 47 U.S.C. § 227 et seq. by not including an opt-out notice that Defendants were to comply with any opt-out request within 30 days, or their conduct would be considered unlawful.

58.     Facsimile advertising imposes burdens on unwilling recipients that are distinct from the burden imposed by other types of advertising. The content of the required opt-out notice is designed to ensure that the recipients have the necessary contact information to opt-out of future fax transmissions. If senders do not clearly and conspicuously provide the opt-out content to the recipients, then the senders fail to enable the recipients with the appropriate information to stop the burden imposed by this form of advertisement.

59.     The TCPA is a strict liability statute and Defendants are liable to Plaintiff and the other Class members even if their actions were negligent.

60.     Moreover, Defendants are liable to Plaintiff and the other Class members under the TCPA for not including an opt-out notice even if Defendants ultimately prove that they obtained prior express permission to send the advertisements by fax or prove that Defendants had an established business relationship with Plaintiff and the other Class members.

61.   Each Defendant is liable because, respectively, it sent the faxes, caused the faxes to be sent, participated in the activity giving rise to and/or constituting the violation, the faxes were sent on its behalf, and/or under general principles of vicarious liability applicable under the TCPA, including actual authority, apparent authority and ratification.

62.   Defendants knew or should have known that Plaintiff and the other Class members had not given express invitation or permission for Defendants or anybody else to fax advertisements about Defendants' goods, products, or services, that Plaintiff and the other Class members did not have an established business relationship with Defendants, that <u>Group Exhibit A</u> faxes are advertisements, and that <u>Group Exhibit A</u> advertisements did not display an opt-out notice as required by the TCPA.

63.   Defendants' actions caused damages to Plaintiff and the other Class members. Receiving Defendants' junk faxes caused the recipients to lose paper and toner consumed in the printing of Defendants' faxes. Moreover, the subject faxes used Plaintiff's and the Class's fax machines. The subject faxes cost Plaintiff time, as Plaintiff and its employees wasted their time receiving, reviewing and routing Defendants' illegal faxes. That time otherwise would have been spent on Plaintiff's business activities. Defendants' faxes unlawfully interrupted Plaintiff's and the other class members' privacy interests in being left alone. Finally, the injury and

property damage sustained by Plaintiff and the other Class members from the sending of Group Exhibit A occurred outside Defendants' premises.

64.     Even if Defendants did not intend to cause damage to Plaintiff and the other Class members, did not intend to violate their privacy, and did not intend to waste the recipients' valuable time with Defendants' advertisements, those facts are irrelevant because the TCPA is a strict liability statute.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendants, jointly and severally as follows:

A.     That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B.     That the Court award $500.00-$1,500.00 in damages for each violation of the TCPA;

C.     That the Court enter an injunction prohibiting Defendants from engaging in the statutory violations at issue in this action; and

D.     That the Court award costs and such further relief as the Court may deem just and proper.

## COUNT II
## CONVERSION

65.     Plaintiff incorporates paragraphs 1 through 29 as though fully set forth herein.

66.     Plaintiff brings Count II on behalf of itself and a class of similarly situated persons.

67.     By sending Plaintiff and the other Class members unsolicited faxes, Defendants improperly and unlawfully converted their fax machines, toner and paper to its own use. Defendants also converted Plaintiff's employees' time to their own use.

68.     Immediately prior to the sending of the unsolicited faxes, Plaintiff and the other Class members owned an unqualified and immediate right to possession of their fax machines, paper, toner, and employee time.

69.     By sending the unsolicited faxes, Defendants permanently misappropriated the Class members' fax machines, toner, paper, and employee time to their own use. Such misappropriation was wrongful and without authorization.

70.     Defendants knew or should have known that their misappropriation of paper, toner, and employee time was wrongful and without authorization.

71.     Plaintiff and the other Class members were deprived of the use of the fax machines, paper, toner, and employee time, which could no longer be used for

21

any other purpose. Plaintiff and each Class member thereby suffered damages as a result of their receipt of unsolicited fax advertisements from Defendants.

72.     Each of Defendants' unsolicited faxes effectively stole Plaintiff's employees' time because persons employed by Plaintiff were involved in receiving, routing, and reviewing Defendants' illegal faxes. Defendants knew or should have known employees' time is valuable to Plaintiff.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendants, jointly and severally as follows:

A.     That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff' counsel as counsel for the class;

B.     That the Court award appropriate damages;

C.     That the Court award punitive damages;

D.     That the Court award attorney's fees;

E.     That the Court award costs of suit; and

F.     That the Court award such further relief as it may deem just and proper.

Respectfully submitted,

PRESSMAN, INC. d/b/a PILL BOX
PHARMACY, a Florida Limited
Liability Company, individually and
as the representative of a class of
similarly-situated persons,


By:   /s/ Phillip A. Bock

Phillip A. Bock
BOCK & HATCH, LLC
134 N. La Salle St,, Ste. 1000
Chicago, IL  60602
Telephone:  312-658-5500